## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ANGEL GARCIA-ESPARZA,

    Plaintiff,

vs.   No. 18-cv-078 MV/SMV

CITY OF AZTEC, *et al*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

    Before the Court is Plaintiff's *Pro Se* Civil Rights Complaint (Doc. 4). Plaintiff is incarcerated and appears *pro se*. He contends that police officers violated the Fourth Amendment during his arrest and that prison officials were deliberately indifferent to his medical needs. Having reviewed the matter under 28 U.S.C. § 1915, the Court will dismiss the Complaint but grant leave to amend.

## I. Background[1]

    Plaintiff's claims stem from his arrest on December 23, 2017. (Doc. 4 at 2). He was at the residence of his romantic partner, Brittany Cotter, when Officers Atencio, Anderson, and Gonzales arrived. *Id.* The officers asked to search the residence, but Brittany Cotter refused. *Id.* Eventually her estranged husband (Tyler Cotter) arrived, and the officers followed Tyler into the house. *Id.* At the time, Plaintiff was locked in the bathroom. *Id.* Tyler Cotter began yelling and hitting the bathroom door. *Id.* Either he or the officers broke down the door, and one officer applied a taser

---

[1] The background facts are taken from Plaintiff's complaint (Doc. 4). For the limited purpose of this ruling, the Court assumes Plaintiff's allegations are true.

to Plaintiff's neck. *Id.* at 3. Officer Atencio then held a taser to Plaintiff's leg, which caused him to see flashing lights. *Id.* at 3, 6. The officers arrested Plaintiff and charged him with, inter alia, aggravated battery on a peace officer. *Id.* at 6. The officers allege Plaintiff bit their hands during the arrest, but Plaintiff contends that any biting was inadvertent. *Id.*

Following his arrest, Plaintiff was transferred to San Juan County Detention Center (SJCDC). (Doc. 4 at 3). Nurses Desirae and Teresa removed the taser darts from his neck. *Id.* at 4. Plaintiff asked to see a doctor, as his hands were purple and he could hardly stay awake, but the medical staff stated that his vital signs were fine. *Id.* SJCDC placed Plaintiff on suicide watch for the first few nights in jail. *Id.* He initially had fluid coming out of his left ear and forehead, and it took him about a week to return to normal. *Id.*

Plaintiff appears to allege that his bond was excessive and that he should not have been arrested for an immigration offense. (Doc. 4 at 5). He also alleges that he never intended to hurt any police officers or resist arrest. *Id.* at 5. Construed liberally, the Complaint raises constitutional claims for: (Count 1) illegal search and seizure; (Count 2) excessive force; and (Count 3) deliberate indifference to medical needs. *Id.* at 8. Plaintiff seeks $5 million in damages from Officers Atencio, Anderson, and Gonzales, Nurses Desirae and Teresa, and various supervisors and wardens at SJCDC.

## II. **Standard of Review**

The Court has discretion to dismiss an *in forma pauperis* complaint *sua sponte* under § 1915(e)(2) "at any time if … the action … is frivolous or malicious; [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). The Court may also dismiss a complaint *sua sponte* under Rule 12(b)(6) of the Federal Rules of Civil Procedure if "it is patently obvious

that the plaintiff could not prevail on the facts alleged, and allowing [plaintiff] an opportunity to amend [the] complaint would be futile." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (quotations omitted). The plaintiff must frame a complaint that contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Plaintiff is *pro se*, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall,* 935 F.2d at 1110. While *pro se* pleadings are judged by the same legal standards that apply to represented litigants, the Court can overlook the "failure to cite proper legal authority, … confusion of various legal theories, … poor syntax and sentence construction, or … unfamiliarity with pleading requirements." *Id.* Further, *pro se* plaintiffs should ordinarily be given the opportunity to cure defects in the original complaint, unless amendment would be futile. *Id.* at 1109.

### III. Discussion

Plaintiff's constitutional claims are asserted pursuant to 42 U.S.C. § 1983, the "remedial vehicle for raising claims based on the violation of [federal] constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016). "A cause of action under section 1983 requires the deprivation of a civil right by a 'person' acting under color of state law." *McLaughlin v. Bd. of Trustees*, 215 F.3d 1168, 1172 (10th Cir. 2000). The plaintiff must allege that each government official, through the official's own individual actions, has personally violated the Constitution. *See Trask v. Franco,* 446 F.3d 1036, 1046 (10th Cir. 1998). There must also be a connection between

3

the official conduct and the constitutional violation. *Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask,* 446 F.3d at 1046.

The Complaint primarily focuses on the officers' illegal entry into Brittany Cotter's residence (Count 1) and the manner of arrest (Count 2). First, the illegal search argument set forth in Count 1 fails as a matter of law. "Fourth Amendment rights are personal, and, therefore, a defendant cannot claim a violation of his Fourth Amendment rights based only on the introduction of evidence procured through an illegal search and seizure of a third person's property or premises." *United States v. Mosley*, 743 F.3d 1317, 1322 (10th Cir. 2014) (quoting *United States v. DeLuca*, 269 F.3d 1128, 1131 (10th Cir. 2001)). Moreover, even if Plaintiff had standing to raise an illegal search argument, a § 1983 action cannot be used to suppress evidence in a state criminal proceeding, overturn any conviction, or prevent a party's removal from the United States. *See Heck v. Humphrey,* 512 U.S. 477 (1994) (federal courts must dismiss any § 1983 damages claim that, if resolved in the plaintiff's favor, would necessarily imply the invalidity of his state conviction); *J.B. ex rel. Hart v. Valdez,* 186 F.3d 1280, 1291 (10th Cir.1999) (federal courts generally cannot interfere with an ongoing state criminal proceeding). Consequently, Count 1 must be dismissed with prejudice.

By contrast, Plaintiff's excessive force claim set forth in Count 2 is potentially cognizable under § 1983, as the claim focuses on the manner of arrest, rather than on the propriety of the state criminal proceeding. "[T]he excessive force inquiry evaluates the force used in a given arrest or detention against the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case." *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007). Excessive force cases involving the use of a taser are highly fact-specific. The Tenth Circuit has held that it

was not excessive for officers to use an electrical stun-gun when a man was wrestling from the ground and biting officers. *See Hinton v. City of Elwood*, 997 F.2d 774, 776-777 (10th Cir.1993). However, the Circuit has found excessive force in cases where police used a taser immediately when the plaintiff opened the door, *see Cavanaugh v. Woods Cross City*, 625 F.3d 625, 665 (10th Cir. 2010), and where police had no "reason to believe that a lesser amount of force – or a verbal command – could not exact compliance." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1286 (10th Cir. 2007).

Based on the instant Complaint, it is difficult to determine whether any defendant applied excessive force. It is unclear what role, if any, Brittany Cotter's estranged husband Tyler played in the altercation, what position Plaintiff assumed when police and/or Tyler opened the bathroom door, and whether Plaintiff wrestled with police in addition to biting them. More importantly, it is not entirely clear which specific defendant(s) used the taser on Plaintiff. The Complaint names three officers, but the narrative portion states: "[t]he officer fired the first taser." (Doc. 4 at 3). For these reasons, the Court will dismiss Count 2 but grant leave to file a more detailed complaint, as set forth below.

In Count 3, Plaintiff alleges that prison officials were deliberately indifferent to his medical needs when he arrived at SCJDC. In *Estelle v. Gamble*, the Supreme Court held that "[a] prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.")). Such deliberate indifference may be

5

"manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05.

Under the *Estelle* deliberate indifference standard, the test for constitutional liability of prison officials "involves both an objective and a subjective component." *Mata*, 427 F.3d at 751 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). First, Plaintiff must show "objective evidence that the deprivation at issue was in fact 'sufficiently serious.'" *Id.* "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209 (citation omitted).

If a plaintiff's claim is based on a delay in medical care, the plaintiff also must show that "the delay resulted in substantial harm." *Mata*, 427 F.3d at 751 (citation omitted). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Id.* (citation omitted). In *Mata*, the Tenth Circuit clarified that, in determining whether the plaintiff has suffered substantial harm as a result of a delay in medical care, there are two distinct types of "substantial harm" that the Court may consider. 427 F.3d at 753. First, the Court may consider "some intermediate harm," such as the plaintiff's experience of prolonged or severe pain or suffering during the period when medical attention was withheld or delayed. *Id.* Second, the Court may consider "the last untoward event to befall" the plaintiff, such as the subsequent or long-term deleterious effect on the plaintiff's health caused by the prison's dilatory response to his medical needs. *Id.* Regardless of which type of harm the plaintiff seeks to establish, "the focus of the objective prong should be solely on whether the

6

harm is sufficiently serious." *Id.*

Once a plaintiff has met the objective prong of the deliberate indifference test by demonstrating that his or her "medical need was objectively sufficiently serious and that defendants' delay in meeting that need caused [him] or her substantial harm," the plaintiff next must meet the subjective prong of the deliberate indifference test. *Id.* at 752. A plaintiff "may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of her condition." *Id.* at 756. "Even a brief delay may be unconstitutional." *Id.*

"The subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind." *Id.* at 751. Specifically, the subjective component is met if the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Notably, "[d]eliberate indifference does not require a finding of express intent to harm." *Mitchell v. Maynard*, 80 F.3d 1433, 1442 (10th Cir. 1996). Accordingly, a plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. In other words, "[t]o show the requisite deliberate indifference," a plaintiff "must establish that defendant(s) knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Kikumura v. Osagie*, 461 F.3d 1269, 1293 (10th Cir.2006) (quoting *Farmer*, 511 U.S. at 847).

Assuming without deciding that Plaintiff's allegations meet the objective prong of the deliberate indifference test by sufficiently stating that his medical need was objectively sufficiently serious and that defendants' delay in meeting that need caused him substantial harm, there is no indication from the Complaint that any defendant was subjectively indifferent to Plaintiff's needs. The Complaint alleges that fluid drained from Plaintiff's ear and forehead following the arrest and that he felt disoriented for about a week. However, Plaintiff has not demonstrated that, despite Plaintiff's stable vital signs, either Nurse Desirae or Nurse Teresa was aware of any serious medical complications, or that any prison official knew about Plaintiff's lingering symptoms.

In addition, most of the named SCJDC defendants are entities or supervisors. County defendants, private corporations acting under the color of state law, and prison supervisors cannot be held liable solely because they employ or oversee a tortfeasor. Such defendants can only be liable if they promulgate an official policy that leads to the constitutional violation. *See Starrett v. Wadley*, 876 F.2d 808, 818 (10th Cir. 1989) (holding that counties "are subject to liability [under § 1983] only for their official policies or customs"); *Hinton,* 997 F.2d at 782 (A private corporation performing a government function can be held liable under § 1983 only where a plaintiff shows "1) the existence of a...policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged."); *Dodd v. Richardson,* 614 F.3d 1185, 1195 (10th Cir. 2010) (Wardens and other supervisors can face § 1983 liability based on the "promulgation, creation, implementation, or utilization of a policy that caused a deprivation of plaintiff's rights"). Plaintiff has not alleged that San Juan County or the various wardens acted pursuant to an official policy or custom. For these reasons, the Court will dismiss Count 3 but grant leave to file a more detailed complaint, as set forth below.

Based on the foregoing, the Court concludes that Plaintiff's Complaint fails to state a cognizable constitutional claim. The Tenth Circuit counsels that "if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." *Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir. 1990). Plaintiff cannot correct the defects in Count 1, as he lacks standing to raise an illegal search argument and this action cannot correct errors in his state criminal proceeding. However, the Court will allow Plaintiff to file an amended complaint, which adds more detail to Counts 2 and 3, within seventy-five (75) days of service of this Order. As to Count 2, Plaintiff should add detail regarding what role, if any, Brittany Cotter's estranged husband Tyler played in the altercation, what position Plaintiff assumed when police and/or Tyler opened the bathroom door, and whether Plaintiff wrestled with police in addition to biting them. Also, Plaintiff should clarify which specific defendant(s) used the taser on Plaintiff, or otherwise used excessive force, detailing what that force entailed. As to Count 3, Plaintiff should add detail demonstrating which specific defendant(s) knew of, but disregarded, any serious medical complications or lingering symptoms that he was experiencing, by failing to take reasonable measures to address them. Finally, to the extent that Plaintiff seeks to pursue his claims against San Juan County or any individual warden, he must include allegations that, if proven, would establish that those defendants each acted pursuant to an official policy or custom.

If Plaintiff declines to timely file an amended complaint or files an amended complaint that similarly fails to state a claim, the Court may dismiss the case without further notice.

**IT IS ORDERED** that pursuant to 28 U.S.C. § 1915(a), **Count 1** (illegal search) is **DISMISSED with prejudice**; and **Count 2** (excessive force) and **Count 3** (deliberate indifference)

9

are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff may file an amended complaint, which amends **Counts 2 and 3**, within seventy-five (75) days of service of this order.

_____
HONORABLE MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE